Filed 8/26/13  In re Jesse Y. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JESSE Y., a Person Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SIMONE M.,<br><br>　　　Defendant and Appellant. | A137111<br><br>(Alameda County<br>Super. Ct. No. HJ-10-015922) |

　　　Appellant Simone M. (mother) appeals from the juvenile court's order terminating her family reunification services. We shall affirm.

## BACKGROUND

　　　On November 5, 2010, Alameda County Social Services Agency (Agency) filed an original petition pursuant to Welfare and Institutions Code[1] section 300, alleging mother failed to protect her male child, Jesse Y. (minor), born in October 2010. The detention report states the minor tested positive for cocaine and oxycodone at birth, and is being treated with morphine for withdrawal symptoms. The minor is the second drug-

---

　　　[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

exposed child born to mother.  Mother admitted using cocaine, has a history of drug abuse and failed to complete a prior drug treatment program.  At the detention hearing, the court found removal necessary and vested temporary placement and care of minor with the Agency.

The Agency's jurisdiction/disposition report dated November 22, 2010, states minor remains hospitalized in the Neonatal Intensive Care (NIC) unit on a low dose of morphine.  Mother is living with father (James Y.) in Livermore, father works full time in Mendocino and has not yet been interviewed.  Mother wants the Agency to release the minor to father, but wants to live in the home and care for the child.  The Agency recommended placement in out-of-home care and that mother receive family reunification services.

The Agency filed a first amended petition on November 23, 2010, alleging the social worker smelled marijuana while at father's home and father has a criminal record, including convictions for assault and drug possession.  On December 8, 2010, the Agency filed a second amended complaint, further alleging father is a registered drug offender and was convicted of assault in May 2004, and that in November 2010 mother tested positive for methamphetamines and amphetamines on a hair test.

At the jurisdiction hearing held on December 2, 2010, the court adjudged minor a dependent child of the court, and placed care and custody of the minor under Agency supervision with the minor to reside with father.  The court ordered family maintenance services to father and informal child welfare services to mother.

The Agency's six-month status review report dated May 12, 2011, states minor was initially diagnosed with a seizure disorder when hospitalized after birth, responded to treatment and is being weaned off the anti-seizure medication.  The minor was noted to be at high risk for delayed development, with impaired range of motion and abnormal muscle tone; however, rehabilitation potential with physical therapy is good.  The report notes father resides in his mother's home with the minor.  Mother moved into her mother's home a few months ago and is working 30 hours per week at Wal-Mart.  Father

reports mother visits daily with minor and mother has attended all minor's medical appointments.

The report states mother "has complied with her case plan minimally." Mother visits minor every day and started substance abuse treatment; she tested four times for drugs and all four tests were clean. However, mother's attendance at substance abuse group treatment has been poor—she started treatment in February 2011 and only attended three out of 48 group sessions and completed four out of 15 required drug tests. She was discharged from the drug program for poor attendance. Mother has been referred to drug court for services, but has not responded to attempts to engage her in those services.

The six-month report concludes mother has not addressed her substance abuse and has made minimal progress towards her case plan goals. Father has made partial progress towards his case plan goals, but is in a relationship with mother and has little or no awareness of her drug use. At a hearing held on May 26, 2011, the court continued the six-month review until November 3, 2011, with current orders remaining in effect.

The Agency filed a status review report on October 19, 2011. The report states father resides in his mother's home with minor and minor's paternal grandmother; father was arrested in July for cultivation of marijuana. Mother continues to reside in her mother's home, but is no longer working at Wal-Mart; however, a Livermore police report prepared on father's arrest for marijuana cultivation charges states father identified mother as living in his home. Mother denied living with father. Regarding the minor, the report states he has been off anti-seizure medication for about six months, is in good health and the quality and variety of his movements are good.

The October 2011 status review report states mother has not complied with her case plan. She has not taken any action to address her substance abuse nor provided any evidence to show she is substance free. Mother has failed to followup with referrals to drug treatment. Mother is apparently acting as the primary caregiver to minor with the acquiescence of father and minor may have been left unsupervised with mother. Father has been minimally compliant with his case plan. Father and paternal grandmother both

3

have medical marijuana cards and father has been arrested for cultivation of marijuana. Father has not engaged in individual therapy during this report period and needs to develop a detailed plan to protect the minor from the impacts of marijuana use in the home, and stop illegal activity related to marijuana. In its minute order of the hearing held on November 3, 2011, the court continued the present order and ordered hair follicle tests for father and minor.

On January 17, 2012, the Agency filed a supplemental petition pursuant to section 387. The detention report related to the supplemental petition states minor is in the home of the paternal grandmother and father has moved out of this home. The drug tests ordered by the court resulted in minor's hair follicle testing positive for methamphetamine. Father and paternal grandmother blamed mother for the positive test, and mother admitted this was true. The detention report states that due to lack of supervision by father regarding mother's contacts with the minor, mother's failure to address substance abuse problems, father's recent drug arrest and the minor's recent positive drug test, the Agency decided to remove the child from father's care. Father agreed to move out of the house in order for minor to remain in grandmother's care. Father also resumed drug testing and started an anger management class. On January 18, 2012, the court adopted the Agency's recommendations, finding continuance in the home of the father is contrary to the minor's welfare and reunification services shall be provided, if appropriate. On January 30, 2012, the Agency filed a jurisdiction report, recommending the court find jurisdiction on the supplemental petition and continue the matter for disposition in order to allow the Agency to further assess the appropriateness of the minor's current placement with paternal grandmother. The jurisdiction report noted father faces pending felony drug possession charges and Livermore police have an open investigation pertaining to the minor's ingestion of methamphetamine. Mother states she is set to begin DUI and drug treatment classes at Axis, to include twice weekly drug testing, and that she is willing to see her son at the Agency office. On February 2, 2012, the court sustained the jurisdictional allegations in the supplemental petition,

4

adopted the Agency's recommendations and scheduled a disposition hearing for March 8, 2012.

On February 7, 2012, the Agency filed an amended supplemental petition under section 387 alleging father allowed mother unrestricted access to minor, placing minor at risk due to his young age and mother's untreated substance abuse issues. In a memorandum (memo) to the court filed on February 14, 2012, the Agency informed the court minor was moved from the home of paternal grandmother and placed in an Alameda County foster home after results of a second hair follicle test indicated the minor now has higher levels of methamphetamine in his system. The Agency's public health nurse confirmed that for the levels of methamphetamine in his hair follicle minor must have ingested methamphetamine. The memo states minor's first positive hair follicle test was thought to be the result of "a one time exposure, 'a fluke' perhaps when the mother stated 'maybe' something fell out of her purse," but the second positive test "shows that the child is being repeatedly exposed—the exact manner is not known." Further, the memo states "the Agency has found the family to be dishonest with the Agency . . . about the current concerns. It is with this in mind and the child's drug level being markedly higher that the Agency believes it could not assure the child's safety in this current placement . . . ."

The Agency filed a disposition report on the section 387 petition dated March 8, 2012. Regarding mother's status, the report states she refuses to participate in hair follicle drug tests. Mother is enrolled in a drug program at Axis consisting of twice weekly group meetings and random urine drug tests, but failed to attend several group meetings and failed to show up for drug tests on three occasions. The director of the Axis program reported mother is avoiding drug testing, not taking her treatment seriously and recommended a residential treatment program. The Agency recommended the minor remain in out-of-home placement and the parents be offered family reunification services. The Agency's addendum, dated March 26, 2012, proposed the same recommendation. Also, as to mother's status, the addendum stated mother was discharged from her

5

outpatient drug treatment program on March 15. Program staff observed mother repeatedly showed up appearing to be under the influence and did not follow directions or submit to drug tests. Mother has been advised to enter a residential treatment program and has been provided with several contacts to that end. At the disposition hearing on March 26, 2012, the court ordered that the minor be removed from the physical custody of father and placed with a licensed foster parent. The court found mother had made no progress, and father minimal progress, toward alleviating the causes necessitating placement; however, the court ordered the Agency to provide family reunification services to father and mother and scheduled a status review hearing for September 13, 2012.

The Agency's six-month status review report dated September 13, 2012, recommended the minor's dependency continue and he remain in out-of-home care. The Agency further recommended family reunification services be continued for father and be terminated for mother. The Agency reported mother's exact residence is unknown and mother stated she has been living with different friends recently. Mother was arrested for disorderly conduct due to intoxication on July 1 and spent two days in jail before being released. According to the police report, mother is three months pregnant with father's second child, and is currently unemployed.

The September 2012 six-month status review states mother has been minimally compliant with her case plan. Mother was provided with a list of residential substance abuse programs, enrolled herself in Shepherd's Gate in May 2012, but left the program after a few days. Mother's face-to-face intake at Cronin House on August 9 was incomplete due to lack of necessary paperwork, and mother did not produce the paperwork necessary to complete intake. Mother was referred to Terra Firma for drug testing and outpatient treatment at the end of March 2012; mother started testing in May and on June 1 she returned a positive result for methadone. Mother claimed her doctor prescribed methadone for back pain. "Currently the mother is not testing, nor involved in a substance abuse treatment program. Her substance abuse remains unaddressed."

6

Mother visited the minor from March to early May 2012, but has not visited since May 3. Mother has not started dyadic therapy with a Services to Enhance Early Development (SEED) therapist due to lack of visitation and engagement in substance abuse treatment. On September 13, 2012, the court continued the minor as a dependent of the court and continued the matter for contest on October 31, 2012.

The Agency's addendum report dated October 31, 2012, states mother enrolled herself in the Project Pride Residential Substance Abuse Treatment Program (Project Pride) on October 4, 2012. The social worker visited mother and her counselor at Project Pride on October 11. The counselor confirmed mother has been attending groups and meetings since her entrance, and has done one urine test on which the result is pending. Mother is five months pregnant and the baby is due in February 2013. The addendum continued to recommend termination of reunification services to mother. At the hearing held on October 31, 2012, the court adopted the Agency's recommendation and terminated reunification services to mother. Mother filed a timely notice of appeal on November 15, 2012.

## DISCUSSION

Mother contends the court improperly terminated services based on the erroneous belief it lacked discretion to continue services. Specifically, mother asserts the court believed it was required to terminate services under section 366.21, subdivision (e)[2] after

---

[2] Section 366.21, subdivision (e) states in pertinent part: "At the review hearing held six months after the initial dispositional hearing . . . the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. The social worker shall have the burden of establishing that detriment. . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. [¶] . . . [¶] If the child was under three years of age on the date of the initial removal, . . . and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may schedule a hearing pursuant to Section 366.26 within 120 days. If, however, the court finds there is a substantial

7

finding mother failed to participate and make substantial progress in her treatment plan. Mother's assertion, however, is reputed by the record.

At the hearing held on October 31, 2012, counsel for the Agency argued "because the statutory framework of reunification for a child under three dictates that unless . . . the parent has participated regularly in and made substantial progress in a . . . treatment plan, that reunification services should be terminated," to which the court responded rhetorically, "Well, must they be terminated?' Counsel for the Agency replied, "Your Honor, the Agency believes that the statutory framework does dictate . . . such a finding."

Following further argument of counsel, the court engaged in the following colloquy with mother's counsel: "The Court: [T]his case was before me . . . back in March . . . . And then it was on calendar again September the 13th . . . . [¶] But then here we are on October the 31st, and the Court is being told that the mother has just enrolled in Project Pride on October the . . . 4th. . . . [¶] So we've got a period at least . . . of about seven months, and the mother is just now getting herself into treatment. Is there a reason for that? [¶] Mr. O'Rourke: [I] don't have knowledge as to why that was. [¶] The Court: [M]y question is essentially why didn't the mother take it upon herself—if she is interested in reunifying with her child, why didn't she take it upon herself to get herself together earlier than she has? [¶] Mr. O'Rourke: Well, that's a good question, Judge. But the fact of the matter is she has gotten started. . . . [S]he's come to the party a little bit late, but she's in the live-in program now. . . . [¶] The Court: [T]his Court sees in these cases too much where adults are not taking responsibility for themselves. And then, as a result of that, their kids get impacted . . . . And the parent's off doing whatever they want to do and not taking responsibility for their lives and their kids's lives. [¶] Let's take a recess for about ten minutes."

---

probability that the child, who was under three years of age on the date of initial removal . . . may be returned to his or her parent or legal guardian within six months or that reasonable services have not been provided, the court shall continue the case to the 12-month permanency hearing."

8

Following the recess, the court announced its ruling, stating, "The Court is going to adopt the recommendations from the agency in this matter. The Court finds that as has been indicated, the mother has come to the party somewhat late. And although the court is pleased that she's currently in a program, the only progress that has been made to date is the fact that she is now, finally, in a program. But the Court doesn't have any information that she's actually made any progress in that program, and the Court does not have any information that she's actually alleviated or eliminated her drug problems, which are fairly significant. The mother has a . . . fairly lengthy history of drug-related problems, and the Court has no indication that she's turned her life around in that regard. . . . I cannot find today that she's made any significant progress at all in alleviating the problem. And so the Court will . . . therefore, terminate the reunification services to the mother."

In its ruling, the court does not state it was required to terminate services or that it lacked discretion to continue services. Although the record perhaps reflects it was *the Agency's position* termination was mandated by statute, nothing in the record demonstrates the court's decision to terminate mother's reunification services was other than a valid exercise of its discretion. Accordingly, mother's contention runs counter to the presumption that the juvenile court knew and correctly applied the law. (Evid. Code, § 664; see also *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913 ["scores of appellate decisions, relying on [Evid.Code, § 664], have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law' "]; *In re Julian R.* (2009) 47 Cal.4th 487, 499 [stating ". . . 'the general rule [is] "that a trial court is presumed to have been aware of and followed the applicable law. [Citations.]" ' 'This rule derives in part from the presumption of Evidence Code section 664 "that official duty has been regularly performed," ' and thus when '. . . the record is silent, a reviewing court will presume the trial court had a proper basis for a particular finding or order.' [Citation.]"].) Thus, mother's contention the court terminated her services based on an improper legal standard must fail.

9

Furthermore, we reject mother's alternative argument that even if the court applied the proper legal standard the court abused its discretion in terminating services. "A court has discretion to terminate services for one parent even when ordering services for the other parent." (*In re Gabriel L.* (2009) 172 Cal.App.4th 644, 651 [" 'In deciding whether to terminate the services of one parent who has failed to participate or make progress toward reunification, the court is not constrained by a consideration of the other parent's participation in services.' "].)

Moreover, if the dependent child was under three years of age on the date of the initial removal (here minor was removed at birth), and at the six-month review hearing the court does not return a minor to parental custody or set a section 366.26 hearing, the court is not required to continue reunification services for any parent who was previously receiving services, irrespective of that parent's compliance with those services; rather, "even when the court does not set a section 366.26 hearing at the six-month review hearing, it retains discretion to terminate services." (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 63 [noting the provision under § 366.21, subd. (e) that if the minor is not returned to a parent's custody, the court must assess the reasonableness of services offered or provided and " 'shall order that those services be initiated, continued, or terminated' " is consistent "with the notion that a parent's services can be terminated at a six-month review hearing without regard to whether the other parent is receiving services or the court sets a section 366.26 hearing."].) In short, "[c]onstrued together, sections 361.5, subdivision (a)(2) and 366.21, subdivision (e) provide the court with the option to terminate reunification services after six months when a parent of a minor under the age of three has 'made little or no progress in [his or her] service plan[ ] and the prognosis for overcoming the problems leading to the child's dependency is bleak.' [Citation.]" (*In re Jesse W., supra,* at p. 64.)

Here, the mother's failure to address the problem that caused the child to be made a dependent child of the court—her substance abuse—is apparent throughout the course of these proceedings, as is her failure "to participate regularly and make substantive

progress" in her treatment plan. (§ 366.21, subd. (e).) In report after report since the original petition was filed in November 2010, the Agency documented mother's failings on these points: Mother tested positive for methamphetamines and amphetamines in November 2010; in May 2011, the Agency reported she had been discharged from her drug treatment program for poor attendance and failed to engage in services offered through drug court; in October 2011, the Agency reported mother had failed to followup with referrals to drug treatment and had taken no action to address her substance abuse; in January 2012, the Agency reported mother admitted she was responsible for the minor's hair follicle testing positive for methamphetamine; in February, the Agency reported minor had been removed from the home of paternal grandmother and placed in an Alameda County foster home after a second hair follicle test revealed the minor now had *ingested* methamphetamine; in March 2012, the Agency reported mother refuses to participate in hair follicle drug tests, and was discharged from her outpatient drug treatment program for failure to attend group meetings, failure to report for drug testing and attending meetings while under the influence; in September 2012, the Agency reported mother had been arrested for disorderly conduct and public intoxication, left a residential program after a few days and failed to complete the paperwork for admission to another residential program, tested positive for methadone, did not visit with the minor since May 3, and had not started dyadic therapy with SEED due to lack of visitation and engagement in substance abuse treatment.

On this record, and despite mother's belated enrollment in a residential treatment facility a few weeks before the six-month review hearing, we cannot say the trial court's decision to terminate reunification services to mother at the six-month review hearing constitutes a clear abuse of discretion. (See *In re Stephanie M*. (1994) 7 Cal.4th 295, 318 [trial court's ruling will not be disturbed absent a clear abuse of discretion] and *Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479 ["The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences

11

can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."].)

**DISPOSITION**

The juvenile court's order is affirmed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P. J.

_____
Banke, J.